FILED by RB D.C.
ELECTRONIC

APR. 4, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN J. MCILVAINE, Individually and on Behalf of a Class of Persons Similarly Situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ARTHROCARE CORPORATION, )<br>MICHAEL BAKER and MICHAEL GLUK )<br>)<br>Defendants. )<br>_____) | Civil Action No.: _____<br><br>## 08-80343-Civ-RYSKAMP/VITUNAC<br><br>DEMAND FOR JURY TRIAL |

FILED by _____ D.C.

APR -- 4 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### CLASS ACTION COMPLAINT

Plaintiff John J. McIlvaine, by his undersigned attorneys, for his Class Action Complaint alleges, upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief based, among other things, upon the investigation conducted by his attorneys, including the review and analysis of filings with the Securities and Exchange Commission, transcripts of ArthroCare Corporation conference calls, securities analyst reports, ArthroCare Corporation press releases and SEC filings, and news articles as follows:

### NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons or entities who purchased the common stock of ArthroCare Corporation ("ArthroCare" or the "Company") between August 4, 2006 and January 23, 2008 inclusive (the "Class Period"). As set forth in detail below, Defendants knowingly or recklessly made a series of material misrepresentations concerning ArthroCare's business and financial results. Moreover, Defendants and employees of ArthroCare profited handsomely from those misrepresentations, selling more than $20 million of ArthroCare stock during the Class Period.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

3.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. 240.10b-5.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) and (c).  Defendants transact business in this District, and many of the acts and transactions constituting the violations of law alleged herein occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and interstate telephone communications.

## THE PARTIES

The Plaintiff

6.      Plaintiff John J. McIlvaine ("Plaintiff") purchased shares of ArthroCare common stock during the Class Period, as set forth in his attached Certification of Named Plaintiff, and was damaged thereby.

The Defendants

7.      Defendant ArthroCare is a Delaware corporation.

8.      Defendant Michael Baker ("Baker") was, at all material times, ArthroCare's President and Chief Executive Officer ("CEO"), as well as a Director of ArthroCare.  His sales of over $11.5 million of Company stock during the Class Period are detailed below.

2

9.     Defendant Michael Gluk ("Gluk") was, from May 11, 2006, the Senior Vice President and Chief Financial Officer ("CFO") of ArthroCare.  His sales of over $800,000 of Company stock during the Class Period are detailed below.

10.    Defendants Baker and Gluk are collectively referred to herein as the Individual Defendants.

11.    The Individual Defendants were at all relevant times during the Class Period controlling persons of ArthroCare within the meaning of Section 20(a) of the Exchange Act. Because of the Individual Defendants' positions with ArthroCare, they had access to undisclosed adverse information about its business, accounting policies, financial condition, and present and future business prospects through access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and meetings of the board and committees thereof, and through reports and other information provided to them in connection therewith.

12.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in ArthroCare's public filings, press releases and other publications as alleged herein are the collective actions of the Individual Defendants. Each of the Individual Defendants, by virtue of his high-level position with ArthroCare, directly participated in the management of ArthroCare, and was directly involved in the day-to-day operations of ArthroCare at the highest level. Each of the Individual Defendants was involved in drafting, producing, reviewing, approving and/or disseminating the materially false and misleading statements and information alleged herein, including SEC filings, press releases, and other publications. Each of the Individual Defendants was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or

3

opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports, releases, and statements detailed herein and is therefore primarily liable for the representations contained therein.

13.     As officers, directors, and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC, traded on the National Association of Securities Dealers Automated Quotation System ("NASDAQ") National Market, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to ArthroCare's financial condition and performance, growth, operations, financial statements, business, earnings, management, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of ArthroCare's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     The Individual Defendants, because of their positions of control and authority as officers and controlling persons of ArthroCare, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to ArthroCare during the Class Period.

15.     Each of the Individual Defendants was privy to confidential proprietary information concerning ArthroCare and its business, operations, prospects, growth, finances, and financial condition as alleged herein. Each of the Individual Defendants was aware of or recklessly disregarded that materially false or misleading statements were being issued regarding ArthroCare, and approved or ratified these statements in violation of the federal securities laws. The Individual

4

Defendants caused, allowed and/or participated in the wrongdoing complained of herein in order to continue and prolong a distorted and misleading appearance of ArthroCare's continued profitability and financial condition and prospects.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities who purchased the common stock of ArthroCare between August 4, 2006 and January 23, 2008, inclusive (the "Class"). Excluded from the Class are Defendants herein, officers and directors of ArthroCare, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

17.     The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class who purchased ArthroCare common stock during the Class Period. As set forth in the Company's annual report on Form 10-K for the year ended December 31, 2007, filed with the SEC on February 29, 2008, the Company had approximately 26,585,219 shares of its common stock outstanding, and traded (and continues to trade) on the NASDAQ National Market under the symbol "ARTC."

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether Defendants issued false and misleading statements during the Class Period;

5

c.     whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

d.     whether the market price of ArthroCare common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

e.     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

19.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

22.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

6

b.  the omissions and misrepresentations were material;

c.  the stock of the Company traded in an efficient market, as it traded at a high weekly volume, was followed and reported on by securities analysts, had numerous market makers, was eligible to file SEC registration form S-3, and there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial news and an immediate response in the stock price;

d.  the misrepresentations and omissions alleged would tend to mislead a reasonable investor concerning ArthroCare's business and/or financial condition; and

e.  Plaintiff and members of the Class purchased their ArthroCare stock at prices that were artificially inflated due to Defendants' material misrepresentations and omissions.

23.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

SUBSTANTIVE ALLEGATIONS

24.  At all times relevant to this litigation, ArthroCare did business as a company that, *inter alia,* marketed medical devices for use in various surgical procedures, including medical devices used in sports medicine surgery (the "ArthroCare Sports Medicine Business") and medical devices used in spinal surgery (the "ArthroCare Spine Business").

25.  The Class Period begins on August 4, 2006, the first trading day after the issuance of a Company press release dated August 3, 2006 (the "August 2006 Press Release"), concerning the Company's business and financial results for the second quarter ended June 30, 2006 (the "June 2006 Quarter"). In the August 2006 Press Release, Defendants, *inter alia*, reported revenues of $66 million and net income of $7.7 million, or $0.28 per diluted share for the June 2006 Quarter, and accounts receivable of $51.232 million.

7

26.     On August 4, 2006, following the issuance of the August 2006 Press Release, the Company filed its quarterly report for the June 2006 Quarter on Form 10-Q (the "June 2006 10-Q") with the SEC, which was signed by Defendants Baker and Gluk.  In the June 2006 10-Q, Defendants, *inter alia*, repeated the net income, accounts receivable and revenue results reported in the August 2006 Press Release.

27.     On October 26, 2006, ArthroCare issued a press release (the "October 2006 Press Release"), which, *inter alia*, reported revenues for the third fiscal quarter ended September 30, 2006 (the "September 2006 Quarter") of $64.7 million and a net income of $8.7 million, or $0.31 per share, as well as accounts receivable of $53.754 million.

28.     Following the issuance of the October 2006 Press Release, on October 31, 2006, the Company filed its report for the September 2006 Quarter on Form 10-Q (the "September 2006 10-Q") with the SEC, which was signed by Defendants Baker and Gluk.  In the September 2006 10-Q, Defendants, *inter alia*, repeated the revenue, net income and accounts receivable figures reported in the October 2006 Press Release.

29.     On February 15, 2007, ArthroCare issued a press release (the "February 2007 Press Release") which reported (i) revenues for the fourth quarter ended December 31, 2006 (the "December 2006 Quarter"), of $69.8 million and a net income of $8.2 million, or $0.29 per share, and (ii) revenues of $263 million for the year ended December 31, 2006, net income of $31.675 million, and accounts receivable of $61.935 million.

30.     On February 27, 2007, the Company filed its annual report for the fiscal year ended December 31, 2006 Quarter on Form 10-K (the "December 2006 10-K") with the SEC, which was signed by Defendants Baker and Gluk.  In the December 2006 10-K, Defendants, *inter alia*, repeated the revenue, net income and accounts receivable amounts previously reported by Defendants, as set

8

forth above, for the June 2006 Quarter, the September 2006 Quarter, the December 2006 Quarter, and the year ended December 31, 2006.

    31.    The December 2006 10-K further also contained the following representations:

        (a)    With respect to the Company's revenue recognition policy, Defendants stated as follows:

> *Revenue Recognition*
>
> We recognize product revenue after shipment of our products to customers has occurred, any acceptance terms have been fulfilled, no significant contractual obligations remain and collection of the related receivable is reasonably assured. Revenue is reported net of a provision for estimated product returns.

        (b)    With respect to the manner in which the Company generated revenues and sold its products in the United States, Defendants represented as follows:

> We are marketing and selling our arthroscopic/sports medicine, spinal surgery and ENT products using a combination of distributors supported by regional sales mangers, a direct sales force and corporate partners to sell our products both domestically and internationally. In the U.S. and Europe, we principally use distributors and field sales representatives to sell our products.

    32.    On April 26, 2007, ArthroCare issued a press release (the "April 2007 Press Release") which reported revenues for the first fiscal quarter ended March 31, 2007 (the "March 2007 Quarter"), of $73.7 million and a net income of $7.1 million, or $0.25 per share, as well as accounts receivable of $61.940 million.

    33.    Following the issuance of the April 2007 Press Release, on May 1, 2007, the Company filed its report for the March 2007 Quarter on Form 10-Q (the "March 2007 10-Q") with the SEC, which was signed by Defendants Baker and Gluk. In the March 2007 10-Q, Defendants repeated the revenue, net income and accounts receivable amounts reported in the April 2007 Press

Release. In addition, with respect to the Company's revenue recognition policy, Defendants stated as follows:

> The Company recognizes product revenue in accordance with SEC Staff Accounting Bulletin No. 104, *Revenue Recognition in Financial Statements* ("SAB 104"). Under SAB 104, revenue is recognized when there is persuasive evidence of an arrangement, delivery has occurred or services have been rendered, the sales price is fixed and determinable and collectibility is reasonably assured. Generally, the criteria are met upon shipment of the Company's products. In certain cases, at the customer's request, the Company will enter into bill and hold transactions whereby title and risk of loss transfers to the customer, but the product does not ship until a specified later date. Revenue on such transactions is recognized only after ArthroCare has met all conditions for bill and hold transactions set forth in SAB 104, specifically that ArthroCare has no further performance obligations, that the product is complete and ready for shipment, and that a fixed schedule for delivery of the product is set. Revenue is reported net of a provision for estimated product returns.

34.     On July 26, 2007, ArthroCare issued a press release (the "July 2007 Press Release") which reported revenues for the first fiscal quarter ended June 30, 2007 (the "June 2007 Quarter"), of $79.5 million and a net income of $10.4 million, or $0.37 per share, as well as accounts receivable of $67.442 million.

35.     Following the issuance of the July 2007 Press Release, on August 1, 2007, the Company filed its report for the June 2007 Quarter on Form 10-Q (the "June 2007 10-Q") with the SEC, which was signed by Defendants Baker and Gluk. In the June 2007 10-Q, Defendants repeated the revenue, net income and accounts receivable amounts reported in the July 2007 Press Release. In addition, with respect to the Company's revenue recognition policy, Defendants stated as follows:

> The Company recognizes product revenue in accordance with SEC Staff Accounting Bulletin No. 104, *Revenue Recognition in Financial Statements* ("SAB 104"). Under SAB 104, revenue is recognized when there is persuasive evidence of an arrangement, delivery has occurred or services have been rendered, the sales price is fixed and determinable and collectibility is reasonably assured. Generally, the criteria are met upon shipment of the Company's products. In certain cases, at the customer's request, the Company will enter into bill and

10

> hold transactions whereby title and risk of loss transfers to the customer, but the product does not ship until a specified later date. Revenue on such transactions is recognized only after ArthroCare has met all conditions for bill and hold transactions set forth in SAB 104, specifically that ArthroCare has no further performance obligations, that the product is complete and ready for shipment, and that a fixed schedule for delivery of the product is set. Revenue is reported net of a provision for estimated product returns.

36.     On October 22, 2007, ArthroCare issued a press release (the "October 2007 Press Release") which reported revenues for the first fiscal quarter ended September 30, 2007 (the "September 2007 Quarter"), of $78.5 million and a net income of $11.1 million, or $0.39 per share, as well as accounts receivable of $71.658 million.

37.     Following the issuance of the October 2007 Press Release, on October 29, 2007, the Company filed its report for the September 2007 Quarter on Form 10-Q (the "September 2007 10-Q") with the SEC, which was signed by Defendants Baker and Gluk.  In the September 2007 10-Q, Defendants repeated the revenue, net income and accounts receivable amounts reported in the October 2007 Press Release.  In addition, with respect to the Company's revenue recognition policy, Defendants stated as follows:

> The Company recognizes product revenue in accordance with SEC Staff Accounting Bulletin No. 104, *Revenue Recognition in Financial Statements* ("SAB 104"). Under SAB 104, revenue is recognized when there is persuasive evidence of an arrangement, delivery has occurred or services have been rendered, the sales price is fixed and determinable and collectibility is reasonably assured. Generally, the criteria are met upon shipment of the Company's products. In certain cases, at the customer's request, the Company will enter into bill and hold transactions whereby title and risk of loss transfers to the customer, but the product does not ship until a specified later date. Revenue on such transactions is recognized only after ArthroCare has met all conditions for bill and hold transactions set forth in SAB 104, specifically that ArthroCare has no further performance obligations, that the product is complete and ready for shipment, and that a fixed schedule for delivery of the product is set. Revenue is reported net of a provision for estimated product returns.

11

38. Defendants' representations, more particularly described in paragraphs 25 - 37 above, were materially false and misleading for at least the following reasons:

a. The Company's reported financial results were materially overstated due to the improper inclusion and recognition of revenue attributable to purported "purchases" of medical devices by DiscoCare, Inc. ("DiscoCare"), an ArthroCare "sales agent" for the sale of ArthroCare medical devices.

b. Specifically, DiscoCare provided ArthroCare medical devices to ArthroCare's customers (*i.e.,* doctors; medical facilities) at no charge and with no unconditional obligation to pay DiscoCare or ArthroCare for the product; instead, DiscoCare provided the medical devices to customers in exchange for either the agreement by the medical facility to assign to DiscoCare the right to bill private third-party insurance companies and other payers for the device, or a letter of protection (an "LOP") from the patient's attorney that was handling a personal injury case for the patient (The LOP provided that if and when a successful resolution of the client's case was reached, DiscoCare would be paid out of the proceeds of the settlement.   If a successful result was not obtained, there was no obligation to pay DiscoCare or ArthroCare).  As a result, ArthroCare and DiscoCare entitlement to payment for the shipment of ArthroCare's products was not unconditional, but was entirely contingent upon the decision of third-party payers to pay for the ArthroCare device or the successful resolution of personal injury lawsuits.  In addition, if a successful result was obtained, ArthroCare then paid DiscoCare a "service fee."

c. It was improper under generally accepted accounting practices (SEC Staff Accounting Bulletin No. 104) for the Company to have recognized any revenue from its transactions with DiscoCare, because DiscoCare did not have an unconditional obligation to pay ArthroCare for the PDD products ("Contingencies that might result in gains usually are not reflected in the accounts

12

since to do so might be to recognize revenue prior to its realization." -- FASB Statement No. 5, Paragraph 17). The inclusion of this revenue materially overstated the Company's revenue, earnings and accounts receivable throughout the Class Period.

      d.    Similarly, it was improper under generally accepted accounting practices for the Company to have recognized any revenue from bill and hold transactions between the Company and DiscoCare involving PDD products which were to be paid for pursuant to the contingent payment arrangement. The inclusion of this bill and hold revenue materially overstated the Company's revenue, earnings and accounts receivable throughout the Class Period.

      e.    Moreover, ArthroCare's financial statements improperly failed to disclose the contingent nature of its revenue ("Adequate disclosure shall be made of contingencies that might result in gains, but care shall be exercised to avoid misleading implications as to the likelihood of realization." -- FASB Statement No. 5, Paragraph 17).

      f.    Similarly, the Company's reported financial results were materially overstated due to the improper inclusion and recognition of revenue attributable to purported "purchases" of medical devices by a related party, Device Reimbursement Services. ("DRS"). Under GAAP, a company's financial statements "shall" disclose: "A description of the transactions, including transactions to which no amounts or nominal amounts were ascribed, for each of the periods for which income statements are presented, and such other information deemed necessary to an understanding of the effects of the transactions on the financial statements." FASB Statement No. 57, Paragraph 2). ArthroCare's failure to include this required information in its financial statements concealed from the investment community the fact that transactions may have (and, indeed, had) been arranged to obtain certain results desired by the related parties and that, accordingly, the resulting accounting measures may not represent what they usually would be expected to represent.

13

g.    The Management Discussion And Analysis Section of ArthroCare's periodic filings with the SEC also failed to contain a truthful description of ArthroCare's business operations and failed to "give investors an opportunity to look at the registrant through the eyes of management by providing a historical and prospective analysis of the registrant's financial condition and results of operations, with a particular emphasis on the registrant's prospects for the future." SEC Staff Accounting Bulletin No. 104.

h.    Defendants failed to disclose that the Company generated and recognized revenue from transactions in which the amounts payable to the Company were due from third-party payors.

<u>Defendants' Material Misrepresentations Caused Plaintiff's Loss</u>

39.    At the beginning of the Class Period, on August 4, 2006, the Company's stock price closed at $44.44. Over the course of the Class Period, the Company's stock price rose, reaching a high of $64.84 on October 31, 2007. As a result of a series of adverse news stories and partial disclosures concerning the propriety of the Company's business relationship with DiscoCare and DRS, as well as the accuracy of the Company's reported financial results, culminating with an article dated January 23, 2008, the price of the Company's stock decreased to approximately $38.11 by January 25, 2008.

<u>Additional Scienter Allegations: Insiders Dump Holdings During the Class Period</u>

40.    In addition to the facts alleged above, which infer scienter, Individual Defendants and other ArthroCare insiders – eight people, in all – dumped their shares in large quantities. Their trading during the Class Period is summarized below:

14

| Name | Date | No. Shares Sold | Approx. Proceeds |
|---|---|---|---|
| | | | |
| | | | |
| Defendant Baker | 8/14/06 | 80,000 | $3,680,473.00 |
| | 10/3/06 | 77,990 | $3,599,300.89 |
| | 7/31/07 | 39,582 | $2,019,110.00 |
| | 8/7/07 | 33,332 | $1,826,658.00 |
| | 8/23/07 | 7,041 | $ 394,296.00 |
| | TOTAL | 237,945 | $11,519,837.89 |
| | | | |
| | | | |
| Defendant Gluk | 8/14/06 | 1,150 | $ 52,900.00 |
| | 9/19/06 | 3000 | $144,000.00 |
| | 10/6/06 | 1,150 | $ 55,200.00 |
| | 12/5/06 | 433 | $ 18,239.95 |
| | 3/14/07 | 900 | $ 42,864.00 |
| | 7/30/07 | 1,450 | $ 69,600.00 |
| | 7/31/07 | 2000 | $ 97,200.00 |
| | 8/2/07 | 1,150 | $ 57,485.02 |
| | 10/1/07 | 1,150 | $ 64,507.52 |
| | 11/1/07 | 1,150 | $ 75,238.75 |
| | 12/3/07 | 1,616 | $ 85,245.52 |
| | 1/3/08 | 1,150 | $ 55,491.85 |
| | TOTAL | 16,299 | $817,972.61 |
| | | | |
| Jack Giroux, Senior Vice President, Surgical | 8/9/06 | 18,748 | $ 842,561.70 |
| | 8/29/06 | 4,607 | $ 206,197.28 |

15

| | 9/29/06 | 4,609 | $ 216,891.78 |
|---|---|---|---|
| | 11/16/06 | 3,777 | $ 162,116.77 |
| | 2/16/07 | 800 | $ 30,424.00 |
| | 2/23/07 | 500 | $ 19,045.00 |
| | 4/5/07 | 1,333 | $ 49,891.66 |
| | 5/30/07 | 2,692 | $ 115,540.64 |
| | 8/7/07 | 4,251 | $ 233,856.14 |
| | 9/5/07 | 417 | $ 23,245.83 |
| | 10/1/07 | 417 | $ 23,497.24 |
| | 10/26/07 | 12,541 | $ 790,577.12 |
| | 11/1/07 | 873 | $ 56,145.77 |
| | 12/5/07 | 417 | $ 22,936.00 |
| | TOTAL | 55,9822 | $2,792,926.93 |
| | | | |
| John Raffle, Senior Vice President, Strategic Business | 9/19/06 | 10,479 | $ 502,992.00 |
| | 5/8/07 | 8,395 | $ 351,526.86 |
| | 7/30/07 | 11,561 | $ 594,665.80 |
| | 8/9/07 | 19,822 | $1,122,676.00 |
| | 10/11/07 | 4,380 | $ 262,800.00 |
| | 10/26/07 | 19,298 | $1,175,236.00 |
| | 11/1/07 | 8,125 | $ 528,125.00 |
| | TOTAL | 82,060 | $4,538,021.66 |
| | | | |
| Richard Christensen, Senior Vice President, Operations | 5/8/07 | 7,171 | $299,460.96 |

16

| | 10/5/07 | 12,500 | $682,877.50 |
| | TOTAL | 19,671 | $982,338.46 |
| | GRAND TOTAL | 411,957 | $20,651,097.55 |

41.    In total, the Individual Defendants and other insiders sold 411,957 shares of the Company's stock for proceeds of more than $20.6 million.

## CLAIMS FOR RELIEF

## COUNT I

(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)

42.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (a) conceal the adverse facts concerning the Company's operations, particularly with respect to its financial condition; (b) artificially inflate and maintain the market price of ArthroCare common stock; and (c) cause Plaintiff and the other members of the Class to purchase ArthroCare common stock at inflated prices, thus causing injury to Plaintiff and the other members of the Class.

17

45.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly reports, SEC filings, press releases and other statements and documents described above, all of which were designed to and did influence the market for ArthroCare common stock. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ArthroCare's finances and business.

46.     By virtue of their positions at the Company and the critical importance of revenue to ArthroCare, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is largely within Defendants' knowledge and control. As the senior managers of the Company, the Individual Defendants had knowledge of the details of the Company's internal affairs.

48.     As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of ArthroCare common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning ArthroCare's business and financial condition that were concealed by Defendants, Plaintiff and the other members of the Class purchased ArthroCare common stock at artificially inflated prices and relied upon the

18

price of the stock, the integrity of the market for the stock and/or upon statements disseminated by Defendants and were damaged thereby.

49.      Defendants' misrepresentations and misconduct directly and proximately caused injury and damages to Plaintiff and the Class. The price of ArthroCare stock was artificially inflated throughout the Class Period. The price of ArthroCare stock decreased upon disclosure of the true facts which had been concealed. Plaintiffs and the Class purchased their ArthroCare stock when the price of that stock was artificially inflated, and held stock at the time of the disclosures of the true facts. The loss suffered by Plaintiffs and the Class was caused by the misrepresentations by Defendants. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of ArthroCare stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.

50.      By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10-5 promulgated thereunder and caused injury and damages to Plaintiff and the other members of the Class.

<u>COUNT II</u>

(Violations of Section 20(a) of the
<u>Exchange Act Against The Individual Defendants</u>)

51.      Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.      (a)      During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of ArthroCare's business affairs. Because of the Individual Defendants' senior positions, they knew the adverse non-public information about ArthroCare.

(b)     As officers and directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to ArthroCare's financial condition and results of operations, and to correct promptly any public statements issued by ArthroCare that had become materially false or misleading.

(c)     Because of their position of control and authority as senior officers and directors of ArthroCare, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings that ArthroCare disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause ArthroCare to engage in the wrongful acts complained herein.  Therefore, the Individual Defendants were "controlling persons" of ArthroCare within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged that artificially inflated the market price of ArthroCare common stock.

53.     As controlling persons of ArthroCare, the Individual Defendants are liable pursuant to Section 20 of the Exchange Act for the violations of ArthroCare.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, and certifying the named class plaintiff;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

20

## JURY DEMAND

Plaintiff demands a trial by jury.

Date:    April 4, 2008

COUGHLIN STOIA GELLER RUDMAN
   & ROBBINS LLP

PAUL J. GELLER
Florida Bar No. 984795
DOUGLAS S. WILENS
Florida Bar No. 0079987
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364
pgeller@csgrr.com
dwilens@csgrr.com

SCHATZ NOBEL IZARD, P.C.
Jeffrey S. Nobel
Mark P. Kindall
Nancy A. Kulesa
20 Church Street, Suite 1700
Hartford, CT  06103
Telephone: (860) 493-6292

SARRAF GENTILE LLP
Joseph Gentile
Ronen Sarraf
11 Hanover Square, 2nd Floor
New York, NY  10005
Telephone:  (212) 868-3610
Facsimile:  (212) 918-7967

*Attorneys for Plaintiff*

21

## CERTIFICATION OF NAMED PLAINTIFF

I, John J. McIlvaine, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.  I have reviewed the complaint (the "Complaint") and authorized its filing on behalf of the class (the "Class") set forth in the Complaint.

2.  I did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.  I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial, if necessary.

4.  My transactions in ArthroCare Corp. during the Class Period defined in the Complaint are set forth on Schedule A attached hereto.

5.  During the three years prior to the date of this Certification, I have not sought to serve, nor have I served, as a representative party on behalf of a class in any private action arising under the federal securities laws.

6.  I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _12_ day of April, 2008.

_____
John J. McIlvaine

## SCHEDULE A - TRANSACTIONS IN ARTHROCARE CORP.

### Purchases of ArthroCare Corp.

J. M   Date                    Transaction                    Price per share

~~1/23/0~~

11/30/07     Buy 100 shares     55. 96

### Sales of ArthroCare Corp.

Date                    Transaction                    Price per share

**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

FILED by ____ D.C.
ELECTRONIC

**APR. 4, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS**

JOHN J. MCILVAINE, Individually and on Behalf of a Class of Persons Similarly Situated

**(b)** County of Residence of First Listed Plaintiff  Cobb County, GA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Douglas Wilens, Coughlin Stoia Geller Rudman & Robbins LLP
120 E. Palmetto Park Road, Suite 500, Boca Raton, FL 33432-4809
(561) 750-3000

**DEFENDANTS**

ARTHROCARE CORPORATION, MICHAEL BAKER and
MICHAEL GLUK

County of Residence of First Listed Defendant   Travis County, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) | | |
|---|---|---|---|---|

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

08CV 80343 KLR/AEV

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Select ve Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☑ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page:)

a) Re-filed Case ☐ YES ☑ NO      b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a)

LENGTH OF TRIAL via  14  days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   April 4, 2008

FOR OFFICE USE ONLY

AMOUNT  350 00   RECEIPT # _____   IFP _____

723991